UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE LEMMONS,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF SONOMA, et al.,<br><br>    Defendants. | Case No. 16-cv-04553-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Bryce Lemmons suffered the amputation of the toes on his left foot and of his right leg below the knee following incarceration at the Sonoma County Main Adult Detention Facility ("MADF"). On the evening of December 26, 2015, the police found Lemmons passed out behind a Safeway store. He blames his injuries on lack of medical care at the jail and sues defendants County of Sonoma ("Sonoma County") and California Forensic Medical Group, Inc. ("CFMG"). Sonoma County moves for summary judgment because Lemmons has not shown that it has an unconstitutional policy or practice under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) and because there is no evidence that the County was aware of any serious medical needs. Lemmons fails to demonstrate that a material issue of fact exists regarding Sonoma County's liability and I GRANT Sonoma County's motion.

## BACKGROUND[1]

On Saturday, December 26, 2015, a Santa Rosa police officer found Lemmons passed out behind a Safeway store in Santa Rosa, California. Deposition of Nicholas Lund (Lund Depo.) at 18:4-21:9, Ex. 1 (Dkt. No. 34-3, Ex. D). The police called an ambulance, and the responding

---

[1] Sonoma County objects to a host of Lemmons's declarations. To the extent that I did not rely on these declarations, Sonoma County's objections are overruled as moot. To the extent that I relied on these declarations, Sonoma County's objections are overruled. I did not rely on inadmissible evidence in reaching my decision.

paramedics took Lemmons to Kaiser Hospital Emergency Room. *Id.* After giving Lemmons IV fluids for several hours and warming him up, Kaiser discharged him into the custody of the Santa Rosa Police Department early Sunday morning (December 27, 2015) because Lemmons had outstanding warrants for his arrest. *Id.* at 28:23-32:20.

The Kaiser emergency room doctor who authorized Lemmons's release understood that Lemmons had a normal gait and was able to walk without assistance upon release. Deposition of Joshua Kucker (Kucker Depo.) at 37:10-39:8 (Dkt. No. 34-3, Ex. C). Lemmons, however, testified that he was unable to stand or walk without pain in his feet and that Kaiser provided him a wheelchair because it was difficult for him to walk. Deposition of Bryce Lemmons (Lemmons Depo.) at 65:7-69:13 (Dkt. No. 34-3, Ex. A).

After Lemmons was booked into the MADF, Christopher Bogart, a registered nurse employed by CFMG, examined him. Deposition of Christopher Bogart (Bogart Depo.) at 61:15-24 (Dkt. No. 34-3, Ex. E). Bogart took Lemmons's vitals. The arresting officer provided pertinent medical information about Lemmons to Bogart. *Id.* at 60:22-61:24. Bogart put Lemmons on the alcohol withdrawal program, noting that Lemmons should be assigned to a lower bunk/lower tier cell and be provided with a wheelchair. *Id.* at 57:5-16.

Lemmons began to feel "pounding pain" within an hour of arriving at MADF and repeatedly asked to see a doctor. Lemmons Depo. at 46:7-12, 62:13-23 (Dkt. No. 40-2, Ex. 2). He was placed on the "sick call" to see a physician after the weekend. The medical providers typically respond to sick call within two days. Deposition of Debra Kolman at 90:14-23 (Dkt. No. 34-4, Ex. I).

On Tuesday December 29, 2015, Lemmons appeared in court. The judge ordered that Lemmons receive medical attention. Declaration of Bonnie Hamilton, Ex. H (Dkt. No. 34-4). Physician's assistant Karen Harford saw him the same day. Deposition of Karen Harford at 52:10-55:19 (Dkt. No. 34-4, Ex. F). She noticed that Lemmons's feet were cool to the touch and visibly discolored. *Id.* at 61:4-62:22. She called for an ambulance to transport Lemmons to Kaiser because it appeared that Lemmons was suffering from decaying tissue in his feet. *Id.* at 62:11-14. After a stay of almost two weeks, Kaiser amputated Lemmons's toes on one foot and

2

the entire leg below the knee of the other foot. Lemmons Depo. at 137:21-140:24 (Dkt. No. 34-2, Ex. A).

Lemmons brought this suit on August 10, 2016 against Sonoma County, CFMG, and the City of Santa Rosa, alleging four causes of actions: (1) a Fourteenth Amendment Section 1983 claim; (2) an Eighth Amendment Section 1983 claim; (3) a Cal. Govt. Code Section 845.6 claim, and (4) a negligence claim. Lemmons stipulated to the dismissal of the City of Santa Rosa with prejudice on March 28, 2017. (Dkt. No. 22). Sonoma County moves for summary judgment for all claims against it. (Dkt. No. 34).

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if it could reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it could affect the outcome of the case. *Id.*

The party moving for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the nonmoving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). Once the movant has made this showing, the burden shifts to the nonmoving party to identify specific evidence showing there is a genuine issue of material fact for trial. *Id.* If the nonmoving party cannot do so, the movant "is entitled to . . . judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Id.* (internal quotations omitted). On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738-39 (9th Cir. 1979).

3

United States District Court
Northern District of California

**DISCUSSION**

**I. MUNICIPAL LIABILITY**

A municipality may not be held liable under Section 1983 for the unconstitutional acts of its employees on a theory of respondeat superior. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). A municipality may only be held liable under Section 1983 where it causes the constitutional violation through its established policies, customs, or practices. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690-91 (1978). A plaintiff who brings a Section 1983 claim against a municipality must demonstrate that any alleged constitutional deprivation was the product of a municipal policy, custom, or practice. *Connick*, 563 U.S. at 60. To establish municipality liability, a plaintiff must prove (1) that the alleged constitutional injury was "committed . . . pursuant to a formal governmental policy or a longstanding practice or custom"; (2) "that the individual who committed the constitutional tort was an official with final policymaking authority"; or (3) "that an official with final policymaking authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Lemmons contends that Sonoma County's motion should be denied because (1) given its non-delegable duty to provide adequate healthcare, Sonoma County is liable for any of the unconstitutional policies, practices, and customs of its corporate healthcare provider, (2) Sonoma County is liable for the acts and omission of any staff defendants who are policymakers,[2] (3) Sonoma County is liable for its own unconstitutional policies, practices, and customs, and (4) Sonoma County is liable under the ratification doctrine. Sonoma County argues that Lemmons cannot satisfy the requirements for *Monell* liability because he fails to provide sufficient evidence to support his allegations against Sonoma County.

**A. Policy, Practice, or Custom**

Lemmons lists fourteen policies, customs, and practices allegedly maintained by Sonoma County and CFMG that give rise to constitutional violations. He asserts that if any material triable

---

[2] Lemmons failed to timely amend his complaint to add individual staff defendants. Accordingly, this argument cannot provide a basis for *Monell* liability in this case.

4

fact exists as to the listed policies, summary judgment should be denied. He also claims that (1) CFMG maintained a practice of depriving patients of timely medical assessment; (2) CFMG failed to provide constitutionally adequate training to its medical staff; and (3) defendants were deliberately indifferent to Lemmons's serious medical needs. In response, Sonoma County argues that its liability should not be linked to CFMG's liability and attacks the sufficiency of the evidence cited by Lemmons concerning its policies, customs, and practices.

### 1. Sonoma County's Liability as to CFMG

Lemmons relies on *West v. Akins*, 487 U.S. 42, 55 (1988), to argue that Sonoma County has a non-delegable duty to provide adequate medical treatment to prisoners in its custody. It cannot absolve itself of that duty merely by contracting out these services. Sonoma County responds that its contract with a private medical provider does not convert an alleged malpractice claim into a constitutional violation.

Sonoma County has a duty to provide prisoners adequate healthcare, whether it contracts out its health care responsibilities or provides them itself. *See Akin*, 487 U.S. at 55 ("Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody"); *Bravo v. City of Santa Maria*, No. CV 06-6851-FMO, 2013 WL 12224038, at *13 (C.D. Cal. July 19, 2013) ("the City, like all municipal entities, has a non-delegable duty to comply with the Constitution"). While CFMG provides the medical care for Sonoma County's prisoners, Sonoma County remains liable for any constitutional deprivations caused by the policies, practices, or customs of CFMG. *See Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) (noting that the constitutional duty to provide medical care "is not absolved by contracting with an entity"). This is its constitutional obligation, not a theory of liability based on respondeat superior.

By ceding control and final decision making to CFMG as it relates to providing adequate healthcare to prisoners, CFMG's policies effectively become the policies of Sonoma County. If CFMG's policies or customs resulted in unconstitutionally inadequate treatment, Sonoma County could be held liable given their non-delegable duty to comply with the Constitution. But if a tort committed by an employee of CFMG was not a result of CFMG's policy or custom, then Sonoma

5

County would not be liable. Liability for the independent actions of a health service employee would be based upon a theory of respondeat superior and not actionable against Sonoma County under Section 1983.

### 2. Sonoma County's and CFMG's Policies, Customs, and Practices

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Absent a formal governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other ground by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

Lemmons argues that (1) CFMG maintained a practice of depriving patients of timely medical assessment; (2) CFMG failed to provide constitutionally adequate training to its medical staff; and (3) defendants were deliberately indifferent to Lemmons's serious medical needs. Lemmons also alleges that Sonoma County and CFMG maintained the following fourteen policies, customs, and practices that purportedly arise to constitutional violations: "(a) Policies to have no medical evaluations of patients performed over weekends; (b) Lack of, or no training to instruct staff when to contact a physician; (c) Practices of making patient wait for more than forty-eight hours without care if medical staff are too busy; (d) No policy to address any time frame in which a patient must be evaluated or a prioritization of medical needs; (e) Failure to train LVNs to follow doctors' orders; (f) Failure to supervise or reprimand LVN for failing to follow doctors' orders; (g) Failure to house patients with serious medical needs in appropriate locations within the Sonoma County Jail; (h) Failure to supervise nursing staff, including RNs and LVNs; (i) Incarcerating a patient who cannot walk into the Sonoma County Jail despite written policy forbidding it; (j) Failure to supervise nursing staff, including RNs and LVNs; (k) Failure to have competent personnel to monitor /manage potential medical emergencies; (l) Failure to defendants to act in accordance with the hospital discharge instructions; (m) Policies of inadequate medical staffing for the expected capacity of inmate at the Sonoma County Jail; (n) Allowed Bryce Lemmons to remain in extreme physical pain without care or regard for his health, safety, or well

being." Oppo. at 12 (Dkt. No. 40).

While most of the policies and practices listed above could conceivably be a basis of liability, Sonoma County contends that Lemmons has provided inadequate evidence to establish a dispute over a material issue of fact as to any of the alleged policies or practices. After a careful review of the record, I agree.

### a. Timely Medical Assessments

Lemmons argues that CFMG maintained a practice of depriving patients of timely medical assessments. To prove the existence of this practice, Lemmons must provide evidence that the practice is so "persistent and widespread" that it constitutes a "permanent and well settled [] policy." *Monell*, 436 U.S. at 691. "Only if a plaintiff shows that his injury resulted from a permanent and well-settled practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). "[E]vidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded" can support a finding of municipal liability. *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). But "[w]hen one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of sufficient duration, frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d at 920. Liability may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct is the established method of carrying out policy. *See Meehan v. Los Angeles County*, 856 F.2d 102 (9th Cir. 1988) (two incidents not sufficient to establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (manner of one arrest insufficient to establish policy).

As evidence of CFMG's alleged practice of depriving patients of timely medical assessments, Lemmons relies on a Technical Assistant Report ("TAR") completed by the National Institute of Corrections and the declaration of Dr. Jacqueline Moore. Lemmons's citations to the TAR fail to support the accompanying statements. Most egregiously, the cited pages do not

contain the provided quotations.[3] Further, to the extent that the cited pages mention medical assessments, they are not directed at general intake procedures, which is the issue here. Instead, the TAR recommends that CFMG replace its initial screening process of inmates with chronic diseases with a more comprehensive medical assessment and examination to be completed within 14 days of an inmate's admission into the jail or sooner for those with acute symptoms. *See* TAR, Ex. 1 at 12-14 (Dkt. No. 40-1, Ex. 1); TAR at 15 (Dkt. No. 40-1, Ex. 1.5). The context and the substance of the cited TAR excerpts do not demonstrate a constitutionally inadequate permanent practice of depriving patients of timely medical assessments under the circumstances of this case without "resort[ing] to inference, conjecture and speculation." *Trevino*, 99 F.3d at 920.

Lemmons also relies on Moore's declaration as evidence of CFMG's alleged practice of depriving patients of timely medical assessments. But the only reference in the cited portions of Moore's declaration to the timeliness of the medical assessments is in reference to Lemmons's examination by Bogart. Moore declares that had Bogart made an assessment of Lemmons's foot, he would have seen the discoloration, and the "bad outcome could have been avoided." Moore Decl. ¶ 20. This does not create a material disputed fact sufficient to defeat summary judgment that CFMG has a policy of depriving patients of timely medical assessments.

Construed in the light most favorable to Lemmons, the evidence demonstrates that CFMG had an inadequate screening procedure for inmates with chronic diseases prior to the commissioning of the TAR, and that if Bogart or another medical provider had given Lemmons a thorough assessment when he was admitted, he or she would have noticed discoloration and potentially avoided Lemmons's injury. This does not show a practice of sufficient duration, frequency, and consistency such that the conduct is the established method of carrying out Sonoma County's policy. Lemmons fails to identify any other instance where an inmate was denied a timely medical assessment at intake. And he fails to provide evidence demonstrating that this practice constitutes the standard operating procedure of CFMG. There is no disputed material fact on this issue.

---

[3] The TAR contains a paraphrase of the provided quotation. *See* TAR, Ex. 1 at 13-14; TAR, Ex. 1.5 at 15. This portion of the report does not address the timeliness of the assessments.

8

#### b. Failure to Train

Lemmons argues that CFMG failed to provide constitutionally adequate training to its medical staff. There are limited circumstances in which an allegation of a "failure to train" can be the basis for liability under Section 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). A plaintiff must show: (1) deprivation of a constitutional right; (2) a training policy that "amounts to deliberate indifference to the [constitutional] rights of persons"; and (3) that his constitutional injury would have been avoided had the municipal entity properly trained its employees. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Lemmons contends that municipal liability should be imposed under the theory of failure to train because CFMG failed to train its staff concerning when a nurse should contact a doctor for a patient's medical condition and failed to hold its employees accountable for knowing and following its policies and procedures. He established that CFMG does not have a specific written policy on when nurses should contact a doctor. *See* Bogart Depo. at 105:15-107:24 (Dkt. No. 40-2, Ex. 3). He also demonstrated that employees are not routinely tested on the policies that guide their employment. *See* Deposition of Robin Coser at 19:3-21:1 (Dkt. No. 40-2, Ex. 13). But he did not present any evidence about the training that the employees do receive. Under *City of Canton*, "the question [is] whether such inadequate training can justifiably be said to represent 'city policy.' " 489 U.S. at 390. Here, Lemmons has not shown that CFMG or Sonoma County inadequately trains its employees, let alone a conscious policy of doing so. He provides no evidence to support his blanket statement that Sonoma County or CMFG had knowledge of continuous constitutional violations of their employees. Accordingly, he does not raise a material dispute concerning his failure to train theory.

#### c. Deliberate Indifference to Lemmons's Serious Medical Needs

Lemmons argues that Sonoma County demonstrated deliberate indifference to his serious

9

medical needs.  First, he asserts that the lack of policy regarding following discharge instructions can be characterized as a "deliberate and conscious effort to deprive inmates of their constitutional rights."  Oppo. at 16.  Second, he contends that housing him in the general jail population in a cell that was not wheelchair accessible illustrates deliberate indifference on the part of Sonoma County.  Third, despite his constant complaint of pain, Lemmons was ignored.  Fourth, he claims that Sonoma Country was on notice of serious deficiencies in the medical care proved to inmates and ignored them.  This deliberate decision, in Lemmons' view, led to his "extraordinary and unnecessary" suffering.  Lastly, Lemmons argues that Sonoma County has a strong and established practice of "not calling doctors such that nurses do not follow their specific limited medical orders."

Municipal liability can only be based on a municipality's constitutional violation through its policies, customs, or practices.  It is not enough that Lemmons provide evidence of deliberate indifference on the part of employees of Sonoma County.  He must demonstrate that a policy, custom, or practice of Sonoma County or CFMG amounts to unconstitutionally deliberate indifference to his medical needs.  As argued, only Lemmons's first and last argument could plausibly support such a theory of *Monell* liability.

### i. Policy Regarding Discharge Instructions

A municipality can be held liable under *Monell* for a policy of inaction if such inaction amounts to a failure to protect constitutional rights.  *See Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("A policy can be one of action or inaction.").  To impose liability against a municipality for its failure to act, a plaintiff must show: (1) that a municipal employee violated the plaintiff's constitutional rights; (2) that the municipality has customs or policies that amount to deliberate indifference; and (3) that these customs or policies were the moving force behind the employee's violation of constitutional rights, such that the municipality could have prevented the violation with a suitable policy.  *Gibson v. County of Washoe*, 290 F.3d 1175, 1193–94 (9th Cir. 2002).  Lemmons argues that the lack of policy regarding following discharge instructions can be characterized as a "deliberate and conscious effort to deprive inmates of their constitutional rights."  Oppo. at 16.

As evidence of this policy of inaction, Lemmons points only to the deposition of Randall Walker, Assistant Sheriff in charge of the Detention Division of Sonoma County's Sheriff's Department. Walker acknowledged that the medical staff did not have a policy of following discharge instructions if they believed, in their medical opinion, that they were inaccurate or against their better judgment. Deposition of Randall Walker at 112:11-113:12 (Dkt. No. 40-2, Ex. 6). This is the only evidence that Lemmons puts forth to support his allegations concerning this "policy." Walker's acknowledgement of the lack of policy to automatically follow discharge instructions fails to demonstrate that (1) a Sonoma County or CFMG employee violated Lemmons's constitutional rights; (2) Sonoma County or CFMG has customs or policies that amount to deliberate indifference; or (3) these customs or policies were the moving force behind the employee's purported violation of Lemmons's constitutional rights such that the Sonoma County or CFMG could have prevented the violation with a suitable policy. Accordingly, Lemmons cannot establish *Monell* liability based on the alleged lack of policy to follow discharge instructions.

### ii. Practice of Nurses Not Calling Doctors

Lemmons argues that Sonoma County has an established practice of "not calling doctors such that nurses do not follow their specific limited medical orders." To support this claim, Lemmons cites a number of depositions and Moore's declaration. The cited portions of Moore's declaration largely do not address the alleged practice of nurses failing to call doctors. *See* Moore Decl. ¶ 8 (addressing the adequacy of the staffing of MADF); ¶ 10 (discussing the prioritization of the sick call list); ¶ 11 (noting that nurses should have a policy to follow provided discharge instructions); ¶¶ 16-17 (stating that the TAR should have been shared with employees and that no policy changes have occurred since the completion of the TAR). To the extent that Moore's declaration supports the notion that CFMG has a practice of nurses failing to call doctors when necessary, it does so in a conclusory fashion that is contradicted by its own evidence. *Compare id.* ¶ 9 ("There appears to be no policy . . . as to when staff are to contact a 'medical provider' "), *with* Deposition of Celeste Garcia at 39:8-45:10 (Dkt. No. 40-2, Ex. 9) (describing when a CFMG nurse is required to call a doctor).

11

The record does not demonstrate the existence of an established custom or practice. At best, it shows that nurses may not always call doctors when CFMG's policies require it. It does not raise a disputed material fact that there is a practice of sufficient duration, frequency, and consistency to make it the established method of carrying out the municipality's policy.

#### d. Enumerated Policies, Customs, and Practices

With respect to the fourteen policies, customs, and practices Lemmons alleges that Sonoma County and CFMG maintain, he fails to cite to any evidence to support most of his list. The exception is "(n) Allowed Bryce Lemmons to remain in extreme physical pain without care or regard for his health, safety, or well being." *See* Oppo. at 12. *Monell* liability cannot be predicated on isolated or sporadic incidents, so this alleged "policy" is not actionable. And because no evidence was cited concerning the other listed policies, customs, and practices, Lemmons failed to raise a disputed material fact.

### B. Ratification Doctrine

Lemmons also argues that Sonoma County ratified the unconstitutional practices of CFMG in two ways: it chose to ignore the known "lack of medical assessments to patients with known medical issues"; and, CFMG failed to revise the plan of care for patients in the alcohol withdrawal protocol and to follow TAR's recommendations regarding assessments and examinations. Lemmons further contends that Walker's alleged inactions on behalf of Sonoma County represent an affirmative choice to ratify the deprivation of plaintiff's constitutional rights.

Sonoma County counters that Lemmons fails to provide any evidence of a "policy-maker" sufficient to invoke liability under *Monell*. A municipality may be held liable under *Monell* for a constitutional violation if a final policymaker ratifies a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999). A plaintiff must show that the "authorized policymakers approve a subordinate's decision and the basis for it." *Id.* at 1239. It is required that the policymaker both have knowledge of the constitutional violation and approve said violation. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim. *Id*.

Lemmons does not point to any evidence that identifies Walker or any other individual as a policymaker for Sonoma County, which is necessary to sustain a *Monell* action. While Lemmons

12

might guess from Walker's title that he is a policymaker, Lemmons offers no evidence that Walker is one, nor can I take judicial notice that he is one. Moreover, Lemmons points to no evidence that Walker knew that Lemmons had been denied medical care. Lemmons does not meet his burden to raise a disputed fact that would allow *Monell* liability based on a theory of ratification.

## II. CAL. GOVT. CODE SECTION 845.6 CAUSE OF ACTION

Section 845.6 liability for a public entity is limited to situations in which a public entity intentionally or unjustifiably fails to provide immediate medical care. *Watson v. State of California*, 21 Cal. App. 4th 836, 841. "In the second clause [of the statute],. . . liability is narrowly limited to the particular instances: (1) where the employee knows or has reason to know of the need (2) of immediate medical care and (3) fails to summon such care." *Id.* at 841-42 (quoting *Sanders v. County of Yuba*, 247 Cal. App. 2d 748 (1967)).

As evidence to support his Section 845.6 claim, Lemmons cites to his own deposition, in which he testifies to repeatedly asking the nurses when he would see a doctor. *See* Lemmons Depo. at 62:11-23 (Dkt. 40-2, Ex. 2). Lemmons provides no other evidence. He does not say that he told anyone why immediate medical care was necessary, a prerequisite to trigger the duty to summon care. Accordingly, he did not present sufficient evidence to create a material issue of fact as to the Section 845.6 claim.

## CONCLUSION

For the reasons discussed above, I GRANT Sonoma County's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 17, 2018

William H. Orrick
United States District Judge

13